SHIRLEY v. O'MALLEY, Collector of Internal Revenue.

Civ. No. 108–49.

United States District Court D. Nebraska, Omaha Division.

June 5, 1950.

———◆———

E. G. Garvey, Omaha, Neb., for plaintiff.

John W. Hussey, Department of Justice, Washington, D. C., Joseph T. Votava United States Attorney, Omaha, Neb., for defendant.

DONOHOE, Chief Judge.

This is an action for the recovery of $36,406.98, the amount of a deficiency assessment levied by the Collector of Internal Revenue and paid by the petitioner under protest; and interest thereon at the rate of 6% per annum from the date of payment on January 17, 1949, to the date of refund. The case was tried before the court and the court makes the following special

### Findings of Fact

**1**

Plaintiff, Paul V. Shirley, an individual doing business under the trade name of Shirley Construction Company, has been in the heavy construction business in and around the city of Omaha, Nebraska, for the past thirty years.

**2**

In 1942, plaintiff rented all of his equipment to Bennett Construction Company for work on an airbase at Topeka, Kansas. During the same year the plaintiff met one E. V. Martin, who was also leasing his entire equipment to the Bennett Construction Company for the Topeka job.

**3**

Sometime in August, 1942, plaintiff learned of a subcontract about to be let on the construction of a Navy Base at Hutchinson, Kansas. Plaintiff did not have sufficient equipment to bid on the job; consequently, he conferred with Martin to see if some arrangement could be made whereby they could combine their equipment and bid on the job. It is undisputed that Martin had more equipment than the plaintiff and that Martin did not wish to actively engage in the business contemplated. With this in mind, the parties entered into a valid and binding partnership agreement which was reduced to writing on August 16, 1942. This agreement was entered into in good faith, for an independent business purpose and was not primarily motivated by any intention to avoid taxes.

**4**

The contract provided, among other things, the following:

a) the working capital was to be contributed fifty-fifty as needed;

b) each party agreed to rent certain listed equipment, which he represented to own, to the partnership at the highest O.P.A. ceiling prices; and

c) the partnership profits were to be distributed in such percentages that "the amount of net profits received by each partner when added to the gross amount of equipment rentals received by each partner would exactly equal the amount of net profits plus the gross amount of equipment rentals received by the other partner".

**5**

The contract provided that E. V. Martin would receive a greater percentage of the equipment rentals since he owned more equipment than the plaintiff, but that the plaintiff would be entitled to more of the profits because the plaintiff agreed to perform special services for the partnership. And the contract was actually performed by the partners in the manner so provided.

**6**

The equipment rentals were to be considered as an expense of the partnership in determining the net profits; and if the enterprize resulted in a loss, the parties would contribute fifty-fifty to make up any deficit, including equipment rentals owed to the partners.

**7**

The original partnership agreement provided that equipment rentals due plaintiff and Martin should be credited on the partnership books as earned, but should not be paid until a project was fully completed and payment therefor received by the partnership. But this provision was later amended and the amendment provided in substance that in addition to crediting equipment rentals when due, the same could actually be paid when mutually agreed by the parties.

**8**

On August 16, 1942, the partners did actually lease certain equipment to the partnership. The leases were validly executed and there is no indication that the parties

intended to pool their equipment rather than lease it to the partnership. When work began on the Hutchinson job, accurate records were kept showing the actual use of each piece of equipment by a time-keeper who was assigned the duty of checking each piece of equipment in and out. There is no dispute of the fact that the amount of rent due to each partner was definitely and accurately ascertained.

### 9

Equipment rentals due plaintiff for the months of September, October, November and December of 1942, amounted to $44,-251.66. The equipment rentals for the months of September and October of 1942, were paid to plaintiff by check on November 23, 1942; and the equipment rentals for the remaining months were accrued to the plaintiff's credit in December, 1942, and paid to him February 23, 1943.

### 10

The plaintiff is an accrual basis taxpayer and reported the $44,251.66 as income in the year 1942. The partnership, in figuring its net profit for its fiscal year ending in July, 1943, deducted as expenses equipment rentals paid to the partners, including the $44,251.66 paid to the plaintiff.

### Conclusions

■ The sole question for determination by this court is whether, under the circumstances set forth above, the $44,251.66 is a properly deductible expense by the partnership in the year 1943. The Collector of Internal Revenue contends that these equipment rentals were merely a distribution of the profits and should be taxed to the plaintiff in 1943, rather than 1942. But the court feels otherwise. In the Frank Butcher Case, T.C.Memo Dkt. No. 16163, June 22, 1949, the Tax Court was faced with a situation somewhat similar to the one presently before us. Two partnerships entered into a joint venture and rented certain equipment to the joint venture partnership. In upholding the Commissioner who allowed the deductions for rent in 1943, but not in 1942, the court said: "The deduction for equipment rental,

here considered, was not accruable on the books of the joint venture until an agreement was entered into making the joint venture liable for the expense. The respondent says that no such agreement was shown to have been entered into until 1943. Petitioners fail to prove the joint venture's liability under the oral agreement, above mentioned, therefore, we hold that no such agreement is shown for 1942." It is true that the Butcher case is not squarely in point but the reasoning indicates that if the partnership is under a binding liability to one of the partners for the expense, that it should be allowed as a partnership deduction.

The Collector, in distinguishing the Butcher case and the West case, West v. C. I. R., 12 B.T.A. 725, from the case presently before us, relies on the fact that in those cases the rental payments were in no way tied up or contingent upon the partnership profits. We can only point out that the rental payments were in no way tied up or contingent upon the partnership profits in this case. It is true that the distribution of the profits was contingent upon the rental payments, but the converse obviously does not follow. The uncontradicted testimony of the partners was to the effect that the rental payments had to be made even if a loss resulted and the loss was to be shared equally. Can the rentals, then, be said to depend upon the profits? The mere fact that there was actually a gain did not in any way alter the legal liability of the partnership, as set forth in the agreement, to pay the equipment rentals. We feel, to a certain extent at least, controlled by the contract the parties actually entered into and carried out. Schwerin v. Commissioner of Internal Revenue, 78 U.S. App.D.C. 275, 139 F.2d 843. And for this reason we feel that the parties did not pool their equipment, but that they leased it to the partnership and that the partnership should be allowed to deduct equipment rentals paid pursuant to the leases.

■ It is not necessary for the decision in this case to distinguish between the "aggregate" and "entity" theory of partnerships. The hybrid nature of any partnership makes it necessary in certain instances

to recognize it as a unit separate and distinct from its members. This is well illustrated by the fact that the Internal Revenue Code provides that a partnership shall be a separate unit for accounting purposes and may take a fiscal year which differs from that of the individual partners. 26 U.S.C.A. § 188. And for the purpose of this case we feel that the partners should be considered distinct from the partnership. It is clear that it would be stretching the "aggregate" theory of partnerships to hold that under the conditions of this case the plaintiff was merely renting equipment to himself. Especially in view of the fact that he would be liable for one-half of any loss occasioned by the equipment rentals, but would not be entitled to one-half of the rentals paid by the partnership since he did not own nor rent one-half of the equipment to the partnership.

Following the rationalization set forth above, and in the light of sound principles of justice, the court is of the opinion that the partnership should be allowed to deduct the equipment rentals as an expense in computing its income for the fiscal year 1943.

Judgment shall be entered accordingly.